UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 06-053-CKK |
| | : | |
| v. | : | |
| | : | |
| PHILIP H. BLOOM, | : | |
| | : | |
| Defendant. | : | |

FILED

APR 17 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO IMPOSE CONDITIONS OF RELEASE

The United States, by and through its undersigned attorneys, respectfully requests that this Court continue to detain defendant Philip Bloom. Pursuant to 18 U.S.C. § 3143(a)(1), because the Defendant has pleaded and been adjudicated guilty of several serious crimes for which the applicable sentencing guidelines plainly provide a term of imprisonment, the Court must continue the Defendant's detention absent a showing by the Defendant of clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released.

Having thoroughly and carefully considered the Defendant's proposed conditions of release, the Government believes that the Defendant, if released, poses a substantial flight risk and that there are no conditions or combination of conditions sufficient to ensure his presence for service of his sentence and his continued cooperation with the United States. In support of its Response, the Government submits the following:

## Introduction

On March 10, 2006, the Defendant pleaded guilty to a three count information charging him with conspiracy, bribery, and money laundering in connection with a scheme to defraud the Coalition Provisional Authority - South Central Region (CPA-SC) in Al-Hillah, Iraq. The Defendant pleaded guilty to one count of conspiracy to commit bribery, honest services wire fraud and interstate transportation of stolen property in violation of 18 U.S.C. § 371; one count of bribery in violation of 18 U.S.C. § 201; and one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h).

In a related case, on February 2, 2006, Robert J. Stein, a former U.S. Department of Defense (DOD) contractor, pleaded guilty to charges of conspiracy, bribery, money laundering, unlawful possession of machine guns, and being a felon in possession of a firearm in connection with a scheme to defraud the CPA-SC.

In two other related cases, on November 30, 2005, Michael Wheeler of Amherst Junction, Wisconsin, and on December 15, 2005, Debra Harrison of Trenton, New Jersey, both Lieutenant Colonels in the United States Army Reserves, were arrested on criminal complaints charging them with conspiring to commit bribery, money laundering, possession of automatic weapons, theft, and wire fraud in Iraq in connection with a scheme to defraud the CPA-SC.

During his plea hearing before this Court, the Defendant admitted that he provided money, cars, jewelry and other items of value to numerous CPA-SC officials, including Stein, in return for them using their official positions to award government contracts to the Defendant and his companies. In addition, the Defendant admitted that he laundered over $2,000,000 in currency stolen from the CPA-SC that had been designated to be used for the reconstruction of Iraq and used his foreign bank accounts in Iraq, Romania, and Switzerland to send the stolen money to Stein and other public officials in return for them awarding contracts to the Defendant and his companies. In total, the Defendant received over $8,641,000 in rigged contracts.

The Defendant has been cooperating with the Government. Due to his professed medical and safety concerns, the Defendant presently remains in custody in the Correctional Treatment Facility (CTF) as opposed to the D.C. Jail. In his motion the Defendant argues that the custody conditions at the CTF prevent him from effectively cooperating with the Government. Access to the Defendant, even with the constraints imposed by the CTF, is still preferable to having the Defendant flee or injure himself while released on bond. While creating some logistical and time constraints, the Defendant's present conditions of incarceration have not prevented the Government from effectively making use of the Defendant's cooperation.

The Government, however, does not oppose a request by the Defendant to be moved to a different correctional facility pending sentence that would make his conditions of detention less burdensome on the Government and the Defendant for purposes of his cooperation.

### Applicable Legal Standard

The court's ability to release a defendant is governed by Chapter 207 of Title 18 of the United States Code, which delineates escalating standards for release as a defendant proceeds through the criminal justice system. See 18 U.S.C. § 3141 et seq. There are three distinct benchmarks for courts to use when considering release: before trial, after conviction but before sentencing, and after sentencing but during the pendency of an appeal. See 18 U.S.C. § 3142 (providing for release or detention before trial; 18 U.S.C. § 3143(a) (providing for release or detention after conviction but before sentencing); and 18 U.S.C. § 3143(b) (providing for release or detention after sentencing but pending appeal). Although the Defendant has merged these benchmarks in his motion, there is no dispute that for the Defendant, who has been adjudicated guilty but not yet sentenced, Section 3143(a) applies and provides in relevant part:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment, be detained, unless the judicial officer

>    finds by clear and convincing evidence that the person
>    is not likely to flee or pose a danger to the safety of
>    any other person or the community if released under
>    section 3142(b) or (c). If the judicial officer makes
>    such a finding, such judicial officer shall order the
>    release of the person in accordance with section
>    3142(b) or (c).

18 U.S.C. § 3143(a)(1).

The Defendant's burden of "clear and convincing evidence" is "something more than 'preponderance of the evidence,'" and something less than 'beyond a reasonable doubt.'" United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985)(citations omitted). For the Court to find that the Defendant has carried his burden by clear and convincing evidence, the Defendant must provide evidence that to a high degree of certainty assures the Defendant's appearance for sentencing and all necessary proceedings, including cooperation with the Government. See Id.

Section 3143 in fact requires in most cases detention after a defendant has been convicted. As one court observed:

>    The legislative history [of the Bail Reform Act of
>    1984] includes two important findings upon which 18
>    U.S.C. § 3143 was based:
>
>    1. Once guilt of a crime has been established in a
>    court of law, there is no reason to favor release
>    pending imposition of sentence or appal. The
>    conviction. . . is presumably correct in law.
>
>    2. Release of a criminal defendant into the community
>    after conviction may undermine the deterrent effect of
>    the criminal law, especially in those situations where
>    an appeal of the conviction may drag on for many months
>    or even years.

United States v. Ross, 730 F.Supp. 355, 356 (D.Kan. 1990)

(citations omitted); S.Rep.No. 225, 98th Cong., 1st Sess. 26 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3209.

Among the factors the court should consider in determining whether to grant a convicted defendant's motion for release pending sentencing are those factors enumerated in 18 U.S.C. § 3142(g) which govern pretrial release. See United States v. Vance, 851 F.2d 166, 169-70 (6th Cir. 1988). Section 3142(g) provides four statutory factors to aid the judicial determination of whether release conditions will reasonably assure a defendant's appearance and community safety: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

During a detention hearing, formal evidentiary rules do not apply. See United States v. Jamal, 623 F. Supp. 2d 1006 (D. Az. 2003) (recorded conversations of defendant admitted in support of detention). The government may even present its evidence in support of detention by way of proffer. See United States v. Karni, 298 F. Supp. 2d 129, 131 (D.C. Cir. 2004). "Congress did not want detention hearings to resemble mini-trials." United States v. Martir, 782 F.2d 1141, 1145 (2nd Cir. 1986) (citing, United States v. Delker, 757 F.2d 1390, 1396 (3rd Cir. 1985)).

## Analysis

As set forth below, under all four Section 3142(g) factors, the Defendant's continued detention is required.

1. **Nature and Circumstances of the Offenses**

The Defendant is 66 years old and faces a maximum statutory penalty of 40 years in prison, a five-year term of supervised release, $3.6 million in restitution, and $3.6 million in forfeited assets, and a fine of $750,000. The defendant's plea agreement does not bind the Court and provides that under the federal sentencing guidelines his offense level is 34, yielding an agreed upon sentencing guideline range of 151-188 months imprisonment. See U.S.S.G. § 2C1.1. Assuming a 3-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, the Defendant still faces 108-135 months imprisonment. Accordingly, the Defendant faces imprisonment for a large percentage, if not all, of his remaining life. See United States v. Levine, 770 F. Supp. 460 (N.D. Ind. 1991) (detention ordered based on risk of flight where defendant could be sentenced to life without the possibility of parole).

Moreover, the Court could sentence the Defendant to a term of imprisonment that is significantly longer than the likely guidelines range of 9 to 11 years and may impose a sentence as high as 40 years. Certainly, even a sentence as substantial as 10 or more years provides a strong incentive to flee. This is

particularly true in the Defendant's case where travel and freedom of movement are second nature to him. Even if the Government is incorrect and the Defendant does not flee, once sentenced and faced with the prospect of returning to prison for a substantial period of incarceration, the Defendant may harm himself and thereby deprive the Government of an effective witness who remains safe and unharmed while incarcerated.

As exhaustively set forth in the Information and Factual Basis for Plea, the Defendant has pleaded guilty to engaging in a sophisticated criminal scheme involving international business transactions, huge volumes of cash and other liquid assets, movement of assets across and within foreign borders, concealment of personal and corporate identities, and bogus or "dummy" corporations. By their nature, these offenses demonstrate familiarity with foreign jurisdictions and suggest that the Defendant is especially capable of taking flight and that he would take flight. In United States v. Hollender, Judge McMahon placed the "maximum possible weight" on the nature and circumstances of the crime to order pretrial detention in a case where the defendant was charged in a $2 million fraud scheme involving the use of aliases and bogus corporations. 162 F. Supp. 2d 261, 266 (S.D.N.Y. 2001). Likewise, the Ninth Circuit agreed and held that a defendant should be detained where the "crimes charged required intelligence, planning, capital,

facility in deception, [and] international communications." United States v. Townsend, 897 F.2d 989, 996 (9th Cir. 1990). Similar to Defendant Bloom, these defendants were held based upon the nature of their offenses and business and travel acumen. These defendants were detained under the lower standard required in the pre-conviction phase. Here, the Defendant is not only an experienced and savvy international businessman but also a convicted felon awaiting imposition of a likely substantial prison sentence. The offenses in this case establish the Defendant's ability to navigate international borders, assemble substantial assets quickly and then hide them, and avoid capture by the government. This factor weighs heavily in favor of detention.

2. **Weight of the Evidence**

The Defendant has pleaded guilty, and the factual basis exhaustively sets out the circumstances surrounding his criminal activities in Iraq, Romania, Switzerland and the United States.

3. **The Defendant's History and Characteristics**

a) History of Deceit and Concealment. Over the past fifteen years, the Defendant has used various corporate entities and nominee companies to conceal his business transactions from the Government and at least since 2003 has engaged in a multi-national, multi-corporation bribes for contracts and international money laundering scheme.

During his plea colloquy, the Defendant admitted that he created numerous "dummy" corporations to rig the award of numerous federally-funded contracts in Iraq. The Government's evidence implicates the Defendant in similar schemes not only in Iraq but in numerous other countries.. The Defendant has admitted to using his access to foreign banking and banking service accounts in Amsterdam, Germany, Iraq, Kuwait, Romania, Switzerland, and the United States, to launder stolen funds and also to wire bribe money to government officials. The Defendant's ability and predilection to conceal money, other financial assets and instruments through fake, nominee or other false business and corporate names and/or accounts is plainly critical to the Court's analysis.

In addition to his most recent known fraud schemes, the Defendant has been previously charged twice for his involvement in substantial check fraud schemes that involved over $500,000 in fraudulently written checks.

In October 1989, the Defendant was charged in the Superior Court of New Jersey, Hunterdon County Division, with one count of Writing a Bad Check and one count of Theft by Deception. These offenses involve the Defendant issuing numerous bad checks to a contractor who did work on the Defendant's property. The case was ultimately declined for prosecution and administratively dismissed.

In April 1991, in connection with another check fraud scheme, the Defendant pleaded guilty in the Superior Court of New Jersey, Somerset County Division to two counts of Theft by Deception and nine counts of Issuing a Bad Check and one count of Issuing a Bad Sight Order. In making its finding of reasons for imposing the Defendant's sentence, the court found that because the Defendant was a first time offender, it sentenced the Defendant to the minimum term of imprisonment of 5 years. Further, the sentencing court observed that the Defendant was likely to respond affirmatively to probationary treatment. As evidenced by his most recent crimes, plainly, the Defendant did not learn his lesson.

In July 1991, in connection with the same fraud scheme, the Defendant pleaded guilty in the Superior Court of New Jersey, Morris County Division to one count of Theft by Deception. The court sentenced the Defendant to three years imprisonment concurrent with his Somerset County sentence.

In September 1991, the Defendant appeared before the New Jersey Intensive Supervision Program's Resentencing Panel, which placed the Defendant on intensive supervision and in May 1992 resentenced him to five years of intensive supervision minus the approximately 4 months he had already served in prison and released the Defendant. Thereafter, the Defendant moved abroad.

The Defendant has more than just an historical interest in

11

identity fraud. See United States v. Powell, 813 F. Supp. 903 (D. Ma. 1992) (use of aliases supports detention based on risk of flight); United States v. Rodgers, 738 F. Supp. 156 (E.D. Pa. 1990) (use of fictitious names in securing utility services supports order of detention). Because of the nature of his previous convictions and in light of his most recent convictions, the Defendant is plainly a recidivist, who has avoided detection for the last 11-15 years only because he has lived abroad and been able to operate his criminal enterprises outside of United States jurisdiction.

b) Financial Means and Sophistication. The Defendant has the financial means and international sophistication that would make it very easy for him to flee and remain abroad indefinitely. He is a highly successful international businessman. Beginning in 2003, in the wake of the chaos following Operation Iraqi Freedom, the Defendant entered Iraq, which was then and remains an active war zone, and started numerous companies in Iraq and other parts of the Middle East which he quickly built into a multi-million dollar operation. There is considerable uncertainty regarding the extent of the Defendant's access to financial resources overseas, owing primarily to the fact that the Defendant has chosen to locate much of his assets in Switzerland and other jurisdictions with strong protections regarding the disclosure of financial

information. See United States v. Anderson, 382 F.Supp.2d 13, 16-17 (D.D.C. 2005) (discussing a defendant's extensive involvement with cash and other liquid assets and banking activities in jurisdictions which have strong financial disclosure laws). Certain facts, however, are clear.

The Government knows that the Defendant is an owner or part owner of numerous companies in Europe and the Middle East. His known companies in Iraq have generated tens of millions of dollars in just three years. The Defendant has personally earned several millions of dollars through his companies and other investments in Iraq, Romania and other countries. These companies continue to profitably operate and earn millions of dollars.

The Defendant has traveled extensively throughout Europe, the Middle East, Africa, Asia and the Caribbean. Indeed, the Government was only able to capture the Defendant by placing him on an international watch list whereby the Defendant was captured in Newark, New Jersey while attempting to navigate United States customs. As a result of living abroad for so long the Defendant has formed close business and personal relationships with hundreds of individuals of foreign citizenship. He has access to an unknown number of foreign bank accounts and controls several privately held businesses that operate outside the United States, which could provide the Defendant with continued financial

support.

While working in Iraq, the Defendant had access to and controlled millions of dollars in cash. Some of the cash could easily be deposited in a safety deposit box or boxes opened abroad by the Defendant which could afford him additional aid in flight. See Anderson, 382 F.Supp.2d at 18 (discussing a defendant's potential access to safe deposit boxes abroad once he's fled).

The Defendant claims that the Government knows about all of his assets both in the United States and abroad. The Government, however, because of the convoluted and complex financial history of the Defendant's personal and corporate assets, is unable to say for certain how many accounts or other financial assets the Defendant owns or otherwise can access abroad.

Similarly, the Government is unsure how many countries have issued passports to the Defendant. Although the Defendant has retained his United States citizenship, he has lived abroad since the early 1990s and for the last 11 years has lived, worked, and had a family in Romania. See United States v. Minns, 863 F. Supp 360 (N.D. Tx. 1994) (court noted that defendant had renounced his United States citizenship and became a citizen of Ireland); and see United States v. Minns, 863 F. Supp 360 (N.D. Tx. 1994) (court noted that defendant had renounced his United States citizenship and became a citizen of Ireland). His extensive

travel further complicates this issue and makes releasing the Defendant on bond even more precarious than simply his unknown financial assets and sophistication.

Detention in this case is also fully consistent with the practice of other courts faced with similarly sophisticated defendants. See United States v. Arndt, 329 F. Supp. 2d 182 (D. Ma. 2004) (Harvard educated physician detained where he frequently traveled and was romantically involved with a Venezuelan national); United States v. Jamal, supra, 623 F. Supp. at 1008 (defendant, a naturalized United States citizen from Lebanon, detained where he owned property valued at $500,000 in Lebanon); United States v. Cole, 715 F. Supp. 677 (E.D. Pa. 1988) (defendants charged with espionage detained where they had access to Yugoslavian passports, visas and bank accounts and maintained ties with people living in Yugoslavia who could assist them in their relocation); United States v. Minns, supra, 863 F. Supp at 364 (serious flight risk found where the IRS had issued notice of levy in the amount of $830,000); United States v. Levine, 770 F. Supp. 460 (N.D. Ind. 1991) (motive to flee enhanced where prominent businessman was currently experiencing a volatile financial situation as evidenced by his filing for bankruptcy).

    c)    <u>Likelihood that the Defendant Will Violate Conditions of Release</u>.

As Magistrate Judge Facciola found in <u>United States v.</u>

Battle, detention based upon the risk of flight prong encompasses more than concerns that the defendant may leave the jurisdiction to avoid prosecution. 59 F. Supp. 2d 17 (D.C. Cir. 1999). Analysis of flight risk also includes consideration of the likelihood that defendant will comply with his release conditions. Id. at 19.

The Defendant is a necessary witness in the Government's very active investigation of bribery, fraud and money laundering in Iraq and elsewhere. If the Defendant were to flee while on pre-sentence release, the inability of the Government to use the Defendant in future prosecutions would be a significant blow to the Government's anti-corruption efforts in Iraq.

The Defendant has at least two prior convictions for fraud. He has now pleaded guilty to a massive bribery and money laundering scheme. The Defendant is 66 years old and effectively faces a life sentence. He has a history of foreign travel and significant financial sophistication. All of these facts weigh heavily in the Government's belief that the Defendant, despite his significant proposed conditions of release, may flee or otherwise harm himself.

16

WHEREFORE, the United States respectfully requests this Court continue its order of detention and deny the Defendant's Motion to Impose Conditions of Release.

DATED: April 17, 2006.

ANDREW LOURIE
Acting Chief, Public Integrity Section

By: _____
James A. Crowell IV
Ann C. Brickley
Trial Attorneys
Public Integrity Section

Mark J. Yost
Patrick Murphy
Trial Attorneys
Asset Forfeiture and Money Laundering Section

U.S. Department of Justice
Criminal Division
1400 New York Ave., NW
Washington, DC 20005
James.crowell@usdoj.gov
Ann.Brickley@usdoj.gov
Mark.yost@usdoj.gov
Patrick.murphy@usdoj.gov

## CERTIFICATE OF SERVICE

    I, the undersigned, hereby certify under penalty of perjury that on this 17th day of April, 2006, I caused to be served by regular mail a copy of the foregoing filing:

    John N. Nassikas, Esq.
    Arent Fox
    1050 Connecticut Ave., NW
    Washington, DC 200036
    (202) 857-6014

    Robert A. Mintz, Esq.
    McCarter & English, LLP
    Four Gateway Center
    100 Mulberry Street,
    Newark, NJ 07102-4056
    (973) 622-4444

    _____
    JAMES A. CROWELL IV
    Trial Attorney
    U.S. Department of Justice
    Criminal Division
    Public Integrity Section
    1400 New York Ave., NW,
    Suite 12100
    Washington, DC 20005
    (202) 514-1412
    james.crowell@usdoj.gov

cc:  James A. Crowell IV
    Ann C. Brickley
    Trial Attorneys
    U.S. Department of Justice
    Criminal Division
    Public Integrity Section
    1400 New York Ave., NW, 12th Floor
    Washington, DC 20005
    (202) 514-1412
    james.crowell@usdoj.gov
    Ann.brickley@usdoj.gov

    Mark Yost
    Patrick Murphy
    Trial Attorneys
    U.S. Department of Justice
    Criminal Division
    Asset Forfeiture and Money Laundering Section
    1400 New York Ave., NW, 2nd Floor
    Washington, DC 20005
    mark.yost@usdoj.gov
    Patrick.murphy@usdoj.gov

    John N. Nassikas, Esq.
    Arent Fox
    1050 Connecticut Ave., NW
    Washington, DC 200036
    (202) 857-6014

    Robert A. Mintz, Esq.
    McCarter & English, LLP
    Four Gateway Center
    100 Mulberry Street,
    Newark, NJ 07102-4056
    (973) 622-4444