UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 06-053 (CKK) |
| | ) | |
| PHILIP H. BLOOM, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT PHILIP BLOOM'S MOTION
TO RECONSIDER DEFENDANT'S PREVIOUS
MOTION TO IMPOSE CONDITIONS OF RELEASE**

Defendant Philip Bloom, by counsel, requests that this Court reconsider its decision of May 6, 2006, denying Defendant's Motion to Impose Conditions of Release (the "Motion"). A hearing on this matter is again respectfully requested and would allow the Court more fully to understand the respective positions of the parties and the full extent of the evidence demonstrating that Mr. Bloom is not likely to flee. In support of this Motion to Reconsider, Mr. Bloom submits the following points and authorities.

**I.   DISCUSSION**

The Court found Mr. Bloom's proposed conditions of release inadequate and denied the Motion based "in large part" on the sophisticated nature of his crimes, the "substantial sentence that he will likely face," and his lack of ties to Washington, D.C. as compared to his ties to Romania. (Mem. Op. 9, May 6, 2006.) Each of these issues is addressed below.

**A.   Proposed Conditions of Release**

In denying the Motion, the Court expressed concern about Mr. Bloom's prior deceptive and dishonest conduct. See id. at 8, 9. To address these concerns and to demonstrate his complete commitment to fulfilling his obligations to the government and to this Court, Mr. Bloom proposes the following additional conditions of release:

> 1. Mr. Bloom will identify all property that he owns or in which he maintains an interest, and, if he fails to uphold the conditions of his release, he agrees to forfeit *all* such property, including but not limited to real property, U.S. and foreign bank accounts, and the stock of all of his companies. Mr. Bloom further proposes that he waive any and all defenses in civil or criminal forfeiture proceedings in the United States or in any country where he maintains any such property or venue is otherwise proper.
>
> 2. In addition to posting her home in New Jersey, Victoria McManus, Mr. Bloom's former wife, will post or agree to forfeit in its entirety her money market account held at Citigroup to secure Mr. Bloom's release. This account has a balance of approximately $150,000.
>
> 3. Mr. Bloom will agree not to use or otherwise access facsimiles, computers, or any similar data storage devices while on conditional release, and will only access the telephone through his attorneys at Arent Fox PLLC.

In combination with Mr. Bloom's initial proposed conditions of release, these conditions would create a significant bail package in which: (1) Mr. Bloom agrees to forfeit *all* of his assets if he attempts to flee; (2) Chris Bloom, Mr. Bloom's son, agrees to forfeit *all* of his assets if Mr. Bloom attempts to flee; (3) Eliot Bloom, Mr. Bloom's brother, posts his home in Pennsylvania, which represents his primary asset; and (4) Victoria McManus posts her home in New Jersey *and* a significant cash bond. In short, Mr. Bloom and his family members are willing to post nearly everything they have in order to clearly and convincingly demonstrate to the Court that Mr. Bloom is not likely to flee. See 18 U.S.C. § 3143(a).

**B. Community Ties**

In its Memorandum Opinion, the Court rejected Mr. Bloom's proposal that he should be subject to home detention in Washington, D.C. and expressed concern over his lack of ties to the city. (Mem. Op. 4, 7.) Mr. Bloom proposed home detention in Washington because he believed that would better enable him to continue his ongoing cooperation with the government while on conditional release. Indeed, other courts have required defendants to obtain and be subject to

home detention in the court's district when the defendants did not already have a home or family there. See, e.g., United States v. Greenberg, Case No. S1-05-Crim. 0888 (LAK), Order of March 6, 2006, attached hereto as Exhibit A (ordering the defendant to "obtain a residence in New York County and [] remain in that residence at all times except to appear in court in this case and as otherwise permitted by prior written approval of Pretrial Services," where defendant's family and residential ties were in California). Alternatively, however, Mr. Bloom's brother, Eliot Bloom, is willing to take custody of Mr. Bloom and have him subject to detention in his home in Warwick, Pennsylvania.

  The Court also rejected Mr. Bloom's suggestion that he could be reunited with his young family while on conditional release. The Court viewed "the existence of Defendant's young family, who permanently reside in Bucharest, Romania, as an element demonstrating Defendant's likelihood of flight." (Mem. Op. 4.) The Court's wariness of Mr. Bloom's family in Romania overlooks the fact that the United States and Romania share both a longstanding extradition agreement and a Mutual Legal Assistance Treaty in Criminal Matters. In addition, Mr. Bloom proposes to sign a waiver of extradition rights as to Romania in particular and every other country in the world if necessary. Mr. Bloom's family in Romania therefore should not suggest a likelihood of flight. To the contrary, Mr. Bloom's significant ties to the United States are demonstrated not only by his family's complete support of his conditional release but also by the fact that Mr. Bloom is an American citizen who has lived in this country for most of his life. These ties demonstrate that Mr. Bloom will not flee if granted conditional release.

  **C. The Nature and Circumstances of the Crimes**

  In analyzing the nature and circumstances of Mr. Bloom's crimes, the Court focused on the "sophisticated" nature of the scheme involving "dummy corporations and the transfer of

millions of dollars of assets to multiple bank accounts in foreign countries." Id. at 5.  A closer look at the scheme, however, reveals it to have been lacking in sophistication.  As to the transfer of funds, Mr. Bloom simply accepted cash from Mr. Stein and deposited it in a bank account in Baghdad.  He would later, at Mr. Stein's request, email instructions to an employee to have the funds wired back to Mr. Stein or his co-conspirators.  Mr. Bloom was thus no more sophisticated than anyone who deposits money in a bank and sends emails to employees.  As a money laundering scheme, it was devoid of sophistication in its mechanics and completely lacking in concealment, as the voluminous documentary evidence in this case demonstrates.  Regarding the "dummy" corporations, Mr. Bloom submitted contract bids, at the request of Mr. Stein and other government officials, in the names of companies that either were not seeking a contract or simply did not exist.  The scheme was unsophisticated in every respect.

The scheme was also different from those in the cases cited by the Court in its Memorandum Opinion.  See id. at 5-6.  In United States v. Townsend, the defendants, in cooperation with contacts in the Soviet Union, purchased high-tech computers in the United States, disassembled and disguised the devices, and then shipped them through several different countries with the help of foreign companies and contacts, all for the purpose of illegally sending critical military technology to the Soviet Union.  897 F.2d 989, 990-91 (9th Cir. 1990).  The government uncovered the scheme after an investigation lasting more than 2 years and involving multiple agencies, recorded telephone conversations, and confidential cooperating witnesses.  See id.  Here, on the other hand, the scheme involved everyday bank transactions, initially was uncovered by an audit, and then was detailed by business records maintained and voluntarily turned over by Mr. Bloom.

4

In <u>United States v. Hollender</u>, the defendant demonstrated the ability and proclivity to make false passports and drivers' licenses, possessed templates for forged passports, and used false identities to facilitate and conceal the scheme to defraud.  162 F.Supp.2d 261, 262-69 (S.D.N.Y 2001).  The defendant then lied to Pretrial Services upon his arrest and proposed a bail package in which he would live with his father – who also was involved in the illegal conduct and who the court found "cannot be trusted."  <u>Id.</u>  Here, Mr. Bloom has no history of using false travel documents or false identities, and he proposes a significant and trustworthy series of release conditions.  Mr. Bloom's past conduct does not suggest a level of sophistication with which Mr. Bloom could evade law enforcement, flee the country, and live as an international fugitive.

**D.  Likely Sentence**

In denying Mr. Bloom's Motion, the Court distinguished this case from <u>United States v. Quinn</u>, 416 F.Supp.2d 133 (D.D.C. 2006), where the defendant had been sentenced to 39 months, and from <u>United States v. Majors</u>, 932 F.Supp. 853 (E.D. Tex. 1996), where the defendant had been convicted and faced a sentence of between 20 months and 5 years.  (Mem. Op. 8, 9.)  Mr. Bloom recognizes that the Court is in the position of considering the potential length of his sentence without the benefit of the information that will be presented by the parties before sentencing.  The parties nonetheless agree that Mr. Bloom has provided significant, continuous, and valuable cooperation since the date of his arrest.  (<u>See</u> Gov't Resp. Def.'s Mot. 3, 8, 16.)  Although Mr. Bloom's plea agreement provides for a likely initial range of 108 to 135 months under the advisory guidelines, his actual sentence would be much less with a downward departure based on his ongoing substantial assistance to the government in its investigation and prosecution of others.  Thus, Mr. Bloom well may face a sentence comparable to those received

by the defendants in <u>Quinn</u> and <u>Majors</u>, and the Court should take guidance from the conditional releases granted in those cases.

## II.  CONCLUSION

Mr. Bloom submits this Motion to Reconsider, with its significantly expanded proposed bail package, in order to persuade the Court that he is completely committed to following any and all conditions of release ordered by this Court.  The Court therefore should reconsider its ruling denying Mr. Bloom's Motion to Impose Conditions of Release and grant a hearing to further consider the matter.  A hearing on this bail request would allow the Court more fully to understand the respective positions of the parties and the potential for a bail package that addresses the government's and the Court's concerns.

                                                Respectfully submitted,

                                                ___/s/  John N. Nassikas III_____
                                                John N. Nassikas III  (Bar No. 387167)
                                                John Gurley  (Bar No. 396894)
                                                ARENT FOX PLLC
                                                1050 Connecticut Ave., N.W.
                                                Washington, DC 20036-5339
                                                (202) 857-6000 (Telephone)
                                                (202) 857-6395 (Fax)

**OF COUNSEL:**

Timothy P. Kane, Esquire
ARENT FOX PLLC
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5339
(202) 857-6000 (Telephone)
(202) 857-6395 (Fax)

Dated:    May 16, 2006