UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>        v.<br><br>PHILIP H. BLOOM,<br><br>    Defendant. | Criminal No.  06–53 (CKK) |

**MEMORANDUM OPINION**
(June 4, 2006)

On May 6, 2006, the Court denied [37] Defendant Philip H. Bloom's Request for a Detention Hearing and Motion to Impose Conditions of Release ("Motion for Release"). *See dkt entries* [46] (Order) and [47] (Memorandum Opinion). On May 16, 2006, Defendant filed [48] Defendant Philip Bloom's Motion to Reconsider Defendant's Previous Motion to Impose Conditions of Release, which is presently before the Court. The government filed [50] Government's Response to Defendant's Motion to Reconsider Motion to Impose Conditions of Release on May 24, 2006. Defendant's counsel indicated during a status conference held May 31, 2006, that Defendant did not intend to file a Reply. The Court notes that on May 19, 2006, Defendant also filed a Notice of Appeal of the instant Court's [46] Order and [47] Memorandum Opinion. After considering the Motion to Reconsider and Opposition presently before the Court, and based on the reasoning set forth in the Court's previous Memorandum Opinion, the Court shall DENY [48] Defendant Philip Bloom's Motion to Reconsider Defendant's Previous Motion to Impose Conditions of Release.

The Court initially notes that while Defendant's Motion is styled as a "Motion to

Reconsider," and will be cited as such, it is in fact in large part merely a supplement to Defendant's earlier Motion for Release, providing additional proposed release conditions and stating additional facts for the Court to consider.  Defendant presents a revised proposed bail package to the Court, including his offer to "identify all property that he owns or in which he maintains an interest, and, if he fails to uphold the conditions of his release, he agrees to forfeit *all* such property."  Mot. Recons. at 2.  However, what Defendant states is an iteration in large part of his *present* obligation to fully disclose his financial assets to the government.  *See dkt. entry* [29] (Plea Agreement) ¶¶ 27–30.  *See also* Gov't's Resp. at 2 ("Defendant has been debriefed a number of time regarding his financial assets and has been willing to provide information about all of his assets so that the Government can determine which assets may be subject to forfeiture and which are not.  During each debrief, the Defendant indicated that he was providing full disclosure of all of his financial assets.").  Defendant also indicates that his former wife has agreed to post a money market account as an asset to secure Defendant's release.  Mot. Recons. at 2.  Putting aside the instability of a money market account as an asset in the first place, the Court relies on its prior statement in its Memorandum Opinion that, "[w]hile . . . these individuals have agreed to post certain of their assets to ensure that [Defendant] follows any conditions of release, their confidence in Defendant's ability to appear before this Court is outweighed by Defendant's incentives to return to a life displaced from the country in which these individuals live."  Mem. Op. at 8.  Defendant also does not counter the government's observation that Defendant and his former wife have been separated for at least a decade, and that while she was the primary care giver for their son while Defendant was living overseas, Defendant's son is now an adult such that this connection is attenuated at best.  *See* Gov't's

Resp. at 3.  Finally, Defendant agrees "not to use or otherwise access facsimiles, computers, or any similar data storage devices while on conditional release, and will only access the telephone through his attorneys at Arent Fox PLLC."  Mot. Recons. at 2.  However, Defendant appears to have ignored the Court's observation in its Memorandum Opinion, that even if the Court could effectively impose such conditions prior to sentencing (which it clearly stated "it will not do"), such conditions would not allow Defendant to work such that he could support himself or his family.  *See* Mem. Op. at 5.  Defendant never addresses this issue, which is further raised in the government's Response.  *See* Gov't's Resp. at 3.

Defendant also offers two new arguments with respect to the Court's finding that Defendant lacks substantial community ties to this district in particular and to the United States in its entirety.  As stated in the Court's [47] Memorandum Opinion, the Court should consider Defendant's community ties, family ties, and length of residence in the community among other factors in determining Defendant's risk of flight pursuant to 18 U.S.C. § 3143(a)(1).  *See* Mem. Op. at 3, 6–7. Defendant offers as an alternative to his securing an apartment in the District of Columbia the option of home detention in the home of his brother, Eliot Bloom, in Warwick, Pennsylvania.  The Court notes that not only has Defendant lived in a different country from Mr. Eliot Bloom for over eleven years (which suggests that these two individuals have not been close for quite some time), but Mr. Eliot Bloom's home is not even within this Court's jurisdiction.  Furthermore, Defendant argues that the existence of his young family in Bucharest, Romania, should not make the Court wary because "the United States and Romania both share a longstanding extradition agreement and a Mutual Legal Assistance Treaty in Criminal Matters."  Mot. Recons. at 3.  It is of little comfort to the Court that should Defendant flee upon release to

Romania, his home of over eleven years, Romania would be legally obligated to extradite Defendant to the United States assuming that he could be detained therein.

Defendant presses the Court to reconsider its assessment of both the nature and circumstances of the crimes committed by Defendant as well as its calculation of the duration of the sentence that Defendant, who is sixty-six years old, will likely receive. *See* Mot. Recons. at 3–7. While Defendant attempts to define the scheme for which he was convicted as "lacking in sophistication," *see* Mot. Recons. at 4, the factual basis for his guilty plea clearly indicates otherwise, as Defendant was involved in a multi-million dollar bribery scheme with government officials involving the use of dummy corporations, deposits in bank accounts in multiple countries, and international money laundering. *See* Mem. Op. at 1–2. *See generally* dkt. entry [28] (Factual Basis). Finally, Defendant argues that as the "parties nonetheless agree that Mr. Bloom has provided significant, continuous, and valuable cooperation since the date of his arrest," Mot. Recons. at 5, his actual sentence "would be much less" than his likely initial range of 108 to 135 months under the advisory sentencing guidelines (assuming a 3-point acceptance of responsibility reduction). The Court thinks it premature at this point to anticipate such a significant sentence reduction. *See also* Gov't's Resp. at 5 ("The fact that Defendant has entered into a cooperation agreement with the government does not guarantee a significantly shortened sentence."). Furthermore, the Court places weight on its observation that despite the fact that the government presently appears to be satisfied with the extent of Defendant's continuing cooperation (as evidenced in its filings and during the status conference held on May 31, 2006), the government still considers Defendant to be a flight risk as indicated in its Response to Defendant's Motion to Reconsider.

In sum, the Court concludes that the additional information and arguments included in Defendant's Motion to Reconsider do not provide any basis on which the Court would reverse its decision to deny Defendant's release. Additionally, based on the extent of the initial briefing with respect to Defendant's Motion for Release and the supplementary filings with respect to the instant Motion to Reconsider, the Court deems a bail hearing with respect to Defendant's detention unnecessary.

For the aforementioned reasons, the Court shall DENY [48] Defendant Philip Bloom's Motion to Reconsider Defendant's Previous Motion to Impose Conditions of Release. An Order accompanies this Memorandum Opinion.

Date:   June 4, 2006

                                              _/s/_
                                              COLLEEN KOLLAR-KOTELLY
                                              United States District Judge