IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | **UNSEALED** |
| ) | |
| v. ) | Criminal No. 06-cr-053-CKK |
| ) | |
| PHILIP H. BLOOM, ) | ~~UNDER SEAL~~ |
| ) | |
| Defendant. ) | |
| ) | |

FILED
JAN 1 2 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## GOVERNMENT'S SENTENCING STATEMENT AND DEPARTURE MOTION BASED UPON SUBSTANTIAL ASSISTANCE TO AUTHORITIES UNDER U.S.S.G. § 5K1.1

COMES NOW the United States of America, by and through its undersigned counsel, and hereby files the instant memorandum in aid of sentencing for the above-captioned matter.

The Government has reviewed the Pre-sentence Investigation Report prepared by the United States Probation Office and has found no factual inaccuracies contained therein.

I.   **Background**

On March 10, 2006, Philip H. Bloom, a U.S. citizen living in Bucharest, Romania, pleaded guilty to a three-count information in the District of Columbia, charging him with conspiracy (18 USC § 371), bribery (18 U.S.C. § 201), and money laundering conspiracy (18 U.S.C. § 1956(h)). Bloom is scheduled to be sentenced on February 16, 2007. Bloom has been incarcerated at the DC Jail following his arrest on November 15, 2005 in Newark, New Jersey. Two of Bloom's co-conspirators, Robert Stein and Lieutenant Colonel Bruce Hopfengardner have previously pleaded guilty and are due to be sentenced in early 2007 as well. In

February 2007 or sooner, we expect to indict Bloom's remaining co-conspirators, Lieutenant Colonels Debra Harrison and Michael Wheeler, Colonel Curtis Whiteford, and William Driver in two separate indictments in the District of New Jersey and the Western District of Wisconsin. In the event of a trial of either case, the government anticipates calling Bloom as a witness.

II. **Guidelines Calculations**

There are no guidelines calculations disputes between the parties' agreed upon guidelines calculations memorialized in the plea agreement and the calculations recommended by the Probation Office.

In the Plea Agreement, the parties agreed that the appropriate Sentencing Guidelines for the conspiracy, bribery and money laundering offenses (Counts One, Two, and Three) are U.S.S.G., §§ 2C1.1 and 2B1.1 (2005 Edition) and that the base offense level is 12 under Section 2C1.1(a)(2). The parties agreed to the following specific offense level increases: a 2-point level increase because the conduct involved more than one bribe or extortion under 2C1.1(b)(1) and a 16-level increase is appropriate under Sections 2C1.1(b)(2) and 2B1.1(b)(1)(I) because the amount of loss attributable to the Defendant exceeded $1,000,000 but was less than $2,500,000, yielding a gross offense level of 30. Bloom was previously convicted of multiple counts

of issuing a bad check and theft by deception in 1991 but is in criminal history category I.

### III. Acceptance of Responsibility

Consistent with the terms of the Defendant's plea agreement, the Government hereby moves the Court for a 3-level reduction in the Defendant's applicable guideline range pursuant to U.S.S.G. § 3E1.1(a) and (b), yielding a recommended net offense level of 27 and a guideline range of 70 to 87 months imprisonment.

### IV. Departure Motion Based Upon Bloom's Substantial Assistance

The Government submits that Bloom's assistance to law enforcement and in particular his post-arrest cooperation have substantially benefitted the prosecution of other co-conspirators in this and other unrelated cases.  Accordingly, the government moves for a downward departure under U.S.S.G. § 5K1.1 based upon Bloom's substantial cooperation in this case.

First, Bloom's immediate cooperation led to the recovery of illegally-obtained assets as well as numerous foreign bank accounts of his companies that held the proceeds of the conspiracy.  Bloom provided extensive information about the bribery, bid-rigging and money laundering schemes which has greatly assisted the Government in obtaining and preparing its evidence against several additional defendants.

Second, information provided by Bloom was utilized in developing probable cause to arrest two additional conspirators,

Harrison and Wheeler. Bloom provided information that corroborated government evidence that Harrison received a Cadillac Denali financed by Bloom. This information, coupled with Stein's admission that he gave Harrison two pistols was used in a warrant to search Harrison's home, resulting in the seizure of the Denali and the pistols. Bloom's assistance further provided agents with the ability to question Wheeler about his participation in the conspiracy and helped lead to the consensual search of Wheeler's home. Bloom also was instrumental in helping us obtain foreign bank and business records from his businesses and banks in Romania and elsewhere.

Third, Bloom's timely consent, used to search his computers, provided the government with thousands of email communications and other documents that provided the government with still more corroboration in the cases against Harrison and Wheeler, and the pending prosecution of Whiteford, as well as incriminating evidence against two unrelated bribe recipients, Steven Merkes and Troy Roberts, who used their official positions to help award government bids to Bloom in return for money. The information provided about Merkes greatly assisted the Government in resolving Merkes' guilty plea, which was filed with the Court on December 30, 2006.

Finally, Bloom provided credible information that has assisted us in the identification of assets and incriminating

4

information we expect to bring out at trial. Additionally, Bloom's assistance in explaining the bid-rigging and money laundering schemes provided valuable first-hand insight into this complex and devious criminal conspiracy.

Since the time of his plea, Bloom has worked with prosecutors and FBI, SIGIR, IRS, and ICE agents during numerous debriefings to build a case against Harrison, Wheeler, Whiteford, as well as William Driver and Michael Morris. Bloom has also agreed to and is expected to testify against Harrison, Wheeler, Whiteford, Driver and Morris in their trial in New Jersey and Wheeler's separate trial in Wisconsin.

In its totality, we believe Bloom's cooperation to date satisfies the "substantial assistance" standard set forth in U.S.S.G. Section 5K1.1.

IV. **Applicable Law**

In the wake of United States v. Booker, federal sentencing is now governed by 18 U.S.C. § 3553(a), which states that district courts "shall consider" several sentencing factors. 543 U.S. 220 (2005). In addition, the Supreme Court in Booker made the Guidelines sentencing range a required consideration, see § 3553(a)(4); but Booker "permits the court to tailor the sentence in light of other statutory concerns as well." Booker, 543 U.S. at 220.

### V.  The Sentencing Factors Support a Sentence in the Government's Proposed Guidelines Range

The § 3553(a) factors firmly support a sentence within the Government's recommended Guidelines range. The first factor is the nature and circumstances of the offense and the history and characteristics of the defendant. The offenses of conviction were highly complex and flagrant violations of criminal law committed with numerous public officials imbued with the public trust during a time of war. The defendant's participation was critical to the success of the conspiracy; indeed, without his assistance, many of financial crimes would not have been possible but for the Defendant's international banking network, experience and contacts.

The second factor is the history and characteristics of the defendant. The fact that the defendant is a repeat offender is, in the government's view, an aggravating factor in this case.

The third factor is the need to reflect the seriousness of the offense and to promote respect for the law. Defendant Bloom and his co-conspirators undermined the effectiveness of the United States' mission to rebuild the Republic of Iraq by stealing U.S. appropriated and Iraqi funds and goods meant for the reconstruction of the infrastructure of Iraq. The seriousness of such offenses are readily apparent from the charges themselves.

The public expects government employees and elected officials to conduct themselves, at a minimum, in accordance with the criminal laws.  Through bribery, fraud and other crimes, this defendant enticed numerous public officials to join him and run afoul of several federal criminal laws and use their public positions for his and their private gain.  This factor weighs heavily against deviation from the sentencing guidelines range advanced by the Government.

The fourth factor is the need to deter criminal conduct. The public has a compelling interest in deterring crimes involving public officials, as these persons, because of their special skills and access, are uniquely positioned to do harm to the public.  The Defendant was involved in widespread and systemic corruption and committed serious crimes in order to further his own financial means and should not be afforded leniency by the Court absent truly compelling circumstances.

The fifth and sixth factors - the need to protect the public and to provide the defendant with rehabilitative or other training or medical care have little or no relevance here.

Finally, the seventh factor is the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar offenses.  Defendant Bloom will be the second defendant to be sentenced for the crimes delineated in the Information.  The government recommended that the first

defendant, Stein, be sentenced to 10 years imprisonment. Defendant Stein pleaded guilty well in advance of Defendant Bloom, which greatly aided the Government in its prosecution of defendant Bloom, did not mitigate his role, and provided extensive and timely cooperation to the Government's investigation. In turn, the government recommended that Stein received a 3 point reduction due to his cooperation in its 5k motion. Accordingly, given the Government's specific sentencing recommendation below, there is no issue with respect to sentencing disparity.

VI. **Sentencing Recommendation**

Taking into account all of the sentencing factors of Section 3553 and the Defendant's assistance to the Government, the Government hereby moves the Court for a departure from the recommended sentencing guidelines under 5k1.1 and depart **4** levels downward, yielding a final offense level of **23,** Criminal History I, which keeps defendant Bloom in **Zone D** and yields a guideline range of 46-57 months.

Although Bloom has cooperated with the Government's investigation, the Government is mindful of the significance of the multiple felonies he committed and the significant potential impact of these crimes to the United State's efforts to rebuild Iraq. Moreover, these financial crimes were committed after the Defendant had previously been convicted of a fraud crime and been

sentenced to prison. Balancing all of these factors, the Government hereby asks the Court to sentence the Defendant to a term of **46** months imprisonment.

Finally, given the substantial forfeiture and restitution claims pending against the Defendant and his ability to pay, the Government does not ask the Court to impose a fine.

Respectfully Submitted,

DATED: January 12, 2007

EDWARD C. NUCCI
Chief, Public Integrity Section

JAMES A. CROWELL IV
ANN C. BRICKLEY
Trial Attorneys
U.S. Department of Justice
Criminal Division
Public Integrity Section
1400 New York Ave., NW
Suite 12100
Washington, DC 20005
(202) 514-1412
james.crowell@usdoj.gov
Ann.brickley@usdoj.gov

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify under penalty of perjury that on this 12th day of January, 2007, I caused to be served by federal express a copy of the foregoing filing:

John N. Nassikas, Esq.
Arent Fox
1050 Connecticut Ave., NW
Washington, DC 200036
(202) 857-6014

_____
JAMES A. CROWELL IV
Trial Attorney
U.S. Department of Justice
Criminal Division
Public Integrity Section
1400 New York Ave., NW,
Suite 12100
Washington, DC 20005
(202) 514-1412
james.crowell@usdoj.gov